The next case for argument is Delgado v. McDowell Good morning. May it please the Court, my name is Stephanie Adractas and I represent Ezequiel Delgado, the petitioner. I would like to reserve five minutes for rebuttal. It is undisputed that a team of three experienced police detectives violated Miranda v. Arizona when they interrogated 16-year-old Ezequiel Delgado about his involvement in a double homicide. The detectives also deliberately withheld the Miranda warnings until they obtained a confession. The State Court of Appeal unreasonably applied Miranda and Missouri v. Siebert when it held that the midstream Miranda warning in this case did not violate Delgado's constitutional rights because it was not part of a plan or a protocol. The interrogation in this case violated the Siebert rule. The Court of Appeal sort of said it was a, what did they say? It wasn't a plan at all, it was sort of just a, there's no method at all? They said there was no method at all, which That sounds like a pretty good description of what was going on, doesn't it? I mean Perhaps it does, but it's the Court of Appeal's focus on whether there was a plan or a method or a protocol and there's some background behind that because the Siebert case itself discusses the fact that police were widely trained to do this and so there was testimony in that case that in fact the police officer in Siebert who used the midstream process had been told during his training to do that but Siebert makes it clear that its holding is not limited to cases where the violation is the result of police training. It says that if the delay of the Miranda warning is deliberate then the police must use curative measures to make sure that the Miranda warnings function as they were intended to and so the Court of Appeal just, in this case, misunderstood Siebert. It focused on this And you're quoting the Kennedy concurrence for that proposition, right? It's not in the main Siebert In the plurality, it is. There's language in the plurality opinion that focuses on this very issue because what they talk about is objective evidence. Look at not what the police officer is saying because of course they have a motivation to downplay whether or not they intended to do this. But the Court of Appeal says we take Justice Kennedy at face value. What is required is a deliberate plan to circumvent, right? And so I understand what you're saying, that there was some sloppy language used about, I think, plan and protocol or something like that, or policy and protocol. But when you read both the trial court written findings and the Court of Appeal's decision, they're not limiting themselves to that, it seems to me. It seems to me they're looking at whether these officers deliberately engaged in a two-step process and both said no. And the error, or the most probably important error in the Court of Appeal decision is the way that it ignores the language in Siebert and in this Court's decision in Williams that it is manifest, and Siebert uses that word, manifestly the most obvious reason why a police officer would not provide Miranda warnings until after getting a confession is to diminish the effectiveness of the warnings. And so they counsel courts to look at the objective evidence of the circumstances of the interrogation, the timing, the location. But the trial court heard these officers. The trial court didn't. Let me finish. The trial court heard these officers and made factual findings. Now, the trial court wasn't always, didn't say, I find as follows. But when you read it, it's pretty clear the trial court's discussion when he says there was no deliberate two-step process is based on a number of factual findings here that I don't see how, if we apply some objective criteria, can overcome those credibility determinations by a trial court. The Siebert decision counsels courts to do exactly that. It says, look at the situation from the point of view of the person who's being interrogated. Are they being moved from their home to a police station? He was. Were they held in a little room with, you know, being interrogated by a couple of people? Yes, he was tag team interrogated. He had his leg chained to the floor. Under these circumstances, the notion that these police officers did not give him Miranda warnings, as they said, because they thought he wasn't in custody, it's absurd. He had been chained to a floor for 90 minutes. They knew he was. Let me ask you this. Don't we have to disagree with the trial court's factual findings in order to rule, the way you're asking us to? The court. Yes. Okay. Okay. The court should look beyond the factual findings that were made by the trial court and the court of appeal. And I would offer that the magistrate, the district judge's analysis goes beyond that and discusses many of the reasons why the trial court and the court of appeal got it wrong in this case. They didn't focus on the factors that Siebert tells the courts they should focus on, which is the continuity of police personnel. We absolutely have that here. They did not focus on whether or not the person who was being interrogated was interrogated continuously, and that's one of the most important facts in this case. The court of appeal doesn't discuss that or seem to weigh it as being important at all, but it's crucial. Can I ask, is there any direct evidence that there was a deliberate two-step strategy or policy? There was no evidence about it, Paul, about a police formal written or informal policy, but if you look at the facts, it's obvious that's what they were doing because they ---- So it's all circumstantial based off of the way things progressed. There's no, like, wait until he confesses and ---- There's two ingredients to Miranda, custody, interrogation. Both of them were obvious here. He was clearly in custody. But there was all this evidence that there was a back and forth between the detectives, and they did not seem to know what was going on. Do you think that was all feigned in some way or ---- Well, not to be too judgmental, but they knew what was going on, of course. All three of them were the lead in the case. None of them claimed to be, you know, the one that was most in charge. They were all operating on the same information. They knew that there was a witness who had described a Hispanic or white. But wasn't the officers, like, in fact, looking for what that person thought, that officer thought was the main suspect when all this happened? That's not credible at all.  First of all, if you look, excerpts of record 415 to 417, you see the detective's testimony where he says, we found a phone at the scene of the homicides. We've looked up what number this guy had been texting with. It went to a Lowe's Brown, my client's friend. They started looking at, oh, who does a Lowe's Brown hang around with? They identify my client. They don't get a warrant for this guy Lynch. They get a warrant for Brown's house. They're looking for Brown, and they're looking for my client, and they find them. So this interest in Lynch was completely much less intense than the interest they had in Brown. It shows by their actions when they got the search warrant. As I understand, part of your argument is that your client, Mr. Delgado, was sort of a prime suspect, a target, if you will. They thought he was a shooter, or at least they highly suspected it, and that is evidence of the deliberate two-step process, right? That's part of your argument. It's one fact, yes. Let me just throw something out and have you respond to it, which is it doesn't seem to me like they were treating him like that sort of person. In other words, if Detective—I'm not sure how you pronounce it, Moe? I think that's correct, Your Honor. Detective Moe goes in and talks to him. There was a finding that he was surprised, right, that he was shackled. There was a factual finding of that, right? The court said that, yes. Right, and you see the video, and he looks surprised. I mean, I don't know 100% if he feigned that or not, but he looked surprised. And then he questions him for a while, believes he's lying pretty clear about his whereabouts that night. Detective Lantin isn't watching this at all. Detective Moe leaves to go find Lynch and just tells Lantin, I think he's lying about his whereabouts, and sends Lantin in. So it doesn't seem like the sort of interview that's being conducted of a prime suspect. It seems very haphazard almost, which really seems to me to gravely undermine your position that this was— that the objective evidence shows this master scheme going on behind the scenes. Your Honor, the magistrate's report directly addresses that issue, and as the magistrate points out, the police at that point knew that they had three suspects because that's what the witnesses described as three men running away. And they—the police clearly thought that Delgado was involved. As the court points out, even if they didn't think he was necessarily the shooter, there were other crimes that were being committed at the scene— the robbery of the purse, the drug transaction at the car. So the notion that one could interrogate Mr. Delgado even about those lesser crimes without giving him a Miranda warning is simply inaccurate. They at least thought that he had done those other things, even if they didn't think that he was the shooter at that point in time. And Lantin, most of all, who was the person who committed the violation in this case, it was clearly Lantin. He walks in and he tells Mr. Delgado again and again and again, I think you were involved in this double homicide, accuses him of lying. Under all the precedents that discuss what is interrogation, that's interrogation. Is this guy in custody? Clearly he is. He has been transported, locked, you know, down to the room. Any experienced officer, much less someone like Lantin, who had been a police officer for 20 years, all three of these officers had two decades and one—16 years of experience. They clearly knew that they had to Mirandize him at this point. And they didn't. Lantin didn't do it. Counsel, you're at four minutes. Do you want to reserve the rest of your time for rebuttal? Yes. Thank you, Your Honor. May it please the Court. Deputy Attorney General Charity Whitney, on behalf of the warden, Delgado's case illustrates better than most how reasonable jurists can disagree. Different courts have viewed the same interviews, the same videos, and the same record in this case and have come to different conclusions about a number of different issues. AEDPA's standards were made for cases like this one. Because the state court's decision was reasonable, even if other jurists might have come to a different conclusion de novo, this court must affirm the denial of the writ under AEDPA. I'm happy to answer any questions the panel may have. Judge Gould, do you have any questions? I have no questions. I have no questions. Well, that was really quick. Thank you, Your Honors. Given counsel's brevity, I may shift to another issue, but I would ask the Court to look closely at the Rays case, which is cited and discussed in my brief, because this case, Mr. Delgado's case, is a better situation for suppression than that in Rays. Rays v. Lewis? Versus Lewis, yes. Okay. And that case is on all fours in many ways with this case. You have a teenage defendant, a person who is very young. It's a homicide case. The government actually had a better argument in Lewis because Mr. Lewis was transported back and forth to his own home between the interrogations. So when you look at what could be a curative measure, I mean, that is a chance for him to reflect. It's a chance for him to think about his rights. But in this case, we had none of that. We had a continuous interrogation where Detective Lontin elicits the first confession, and he doesn't even stop there. He doesn't stop and say, you have a right to remain silent, and I need you to really understand your rights here. He says, now we're going to go back over all these facts again. He says, he doesn't ask any time. I thought he didn't know whether or not he was Mirandized, and he got a text message saying you got him at Mirandized at that point. He knew that he wasn't Mirandized because he hadn't Mirandized him, and he discussed with Detective Moe what had happened. One of the things that's – That apparently, according to them at least, was a very brief conversation, right? Right. But one of the things that's conflicting about how the detectives presented this at the suppression hearing is they said, well, we didn't think he was a suspect, and we didn't think he was in custody. Well, if that's true, if everything they were saying under oath at the suppression hearing was true, there would have been no reason to Mirandize him. So they knew he wasn't Mirandized. They were telling the court under oath at the suppression hearing. You realize the uphill battle you have, though. We have to overturn credibility findings of the state court. I don't even know if I've ever seen that under AEDPA. The court can also find, as it should, that the state court of appeal decision unreasonably applied Miranda and Siebert. And in that circumstance, the AEDPA standard does not apply because the state court has unreasonably applied the clearly established constitutional standards. The magistrate's report also very clearly and helpfully analyzes why the testimony of the detectives at the suppression hearing wasn't credible. And one of the factors that should be highlighted is that an officer who was not deliberately doing this end run around the Miranda rule would have stopped immediately when the person started to confess and said, I need to read you your rights, you need to understand these things, do you want to waive your rights? He never did that. Instead, he said he waited until the entire scenario had been described and then said, well, now we're going to go over all this again. That in and of itself shows an intention to violate Miranda because why would he tell him, not ask him, but tell him that he's going to repeat the story and then read him his rights? It doesn't make any sense. It comes off when you see it on the tape and when you read the transcript as a deliberate end run around the Miranda rule and as a method that was used to diminish the effectiveness of the warnings. And that is exactly what the United States Supreme Court was so concerned about at Siebert. They did not want to see this practice become widespread because it essentially eviscerates the Miranda rule. Thank you. Thank you, counsel. This case is submitted and the court is in recess for today. All rise.
judges: GOULD, BUMATAY, Seabright